UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Anne Marie Rasmusson,

Plaintiff,

v.

Chisago County; Jay Belisle, acting in his individual capacity as an employee of the Chisago County Sheriff's Department; Pine County; Blake Fjosne, acting in his individual capacity as a Deputy of the Pine County Sheriff's Department; Rebecca Lawrence, acting in her individual capacity as a Deputy of the Pine County Sheriff's Department; Dan Vosika, acting in his individual capacity as a Deputy of the Pine County Sheriff's Department; John Melvin, acting in his individual capacity as an Officer of the Minnesota Department of Corrections; Millicent Tompa, acting in her individual capacity as an Agent of the Federal Bureau of Investigation; Sean Huls, acting in his individual capacity as a Sergeant of the University of Minnesota-Duluth Police Department; Dean Grothem, acting in his individual capacity as a Trooper of the Minnesota State Patrol; Elke Hobus, John and Jane Does (1 - 50) acting in their individual capacity as supervisors of the other named law-enforcement agencies;

Defendants.

Civil File No. 12-CV-632 (SRN/JSM)

**FIRST AMENDED COMPLAINT (THIRD REVISION)**

**JURY TRIAL DEMANDED UNDER FRCP 38(b)**

---

For her First Amended Complaint (Third Revision), for which she demands trial by jury on all claims so triable, Plaintiff Anne Marie Rasmusson ("Rasmusson") hereby states and alleges as follows:

## INTRODUCTION

The United States Supreme Court long has recognized privacy as a fundamental constitutional right protected by the U.S. Constitution and entitled to protection from encroachment by the States, both under the Fourth and Fourteenth Amendments and under various protections extended to the people of the United States by the Bill of Rights. To enforce those rights, the legislative branch of our federal government has adopted a strict approach to the protection of privacy interests, particularly in the past twenty years. Recognizing that law-enforcement personnel, among others, have the ability to access any person's private information, especially that information retained by the State in connection with a driver's license, Congress passed legislation commonly known as the Driver's Privacy Protection Act of 1994 ("DPPA") to safeguard this information. In a separate but related vein, in 1997 the Minnesota Supreme Court first recognized the tort of invasion of privacy. This case involves the invasion of privacy and illegal searches of Plaintiff Anne Rasmusson by approximately 144 Minnesota law-enforcement officers, who accessed, used or disclosed her private information approximately 554 times in the time period 2005 to 2012, without any legitimate business reason to do so, and who not only violated the DPPA, 42 U.S.C. § 1983 and state law, but have damaged Plaintiff Rasmusson's life by these violations. Plaintiff is entitled to a determination that her rights have been violated, to an order enjoining further violations, and to monetary damages for these invasions of her privacy.

### General Background of Law and Facts

1. This is an action for injunctive relief and money damages for injuries sustained when approximately 144 law-enforcement personnel in Minnesota illegally viewed Plaintiff Anne Marie Rasmusson's private, personal, and confidential driver's license information without

a legitimate purpose. These law-enforcement personnel knowingly viewed her private information in excess of 550 times from the 2005 to 2012. Further, several of these individuals knowingly used or disclosed Rasmusson's private information. Each unauthorized use of her private information, made while acting under color of state law, violated Rasmusson's federal civil rights and constituted behavior prohibited by federal statute, Minnesota statute, common law, and agency and departmental regulations prohibiting some or all of the conduct engaged in by Defendants in this case.

2. Rasmusson brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the United States Constitution, 28 U.S.C. §§ 1331 and 1343(a)(3), the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 et seq., and Minnesota common law invasion of privacy. The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. The amount in controversy exceeds $75,000, excluding interests and costs.

**The Parties**

4. Rasmusson is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

5. Defendant Chisago County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

6. Defendant Pine County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 et. seq.

7. Plaintiff will refer to the entities named in paragraphs 5 and 6 above collectively as the "Defendant Entities" or "Entity Defendants."

8. Defendant Jay Belisle ("Belisle"), upon information and belief, was at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as an employee of the Chisago County Sheriff's Department.

9. Defendant Blake Fjosne ("Fjosne"), upon information and belief, was at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as a Deputy of the Pine County Sheriff's Department.

10. Defendant Rebecca Lawrence ("Lawrence"), upon information and belief, was at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in her individual capacity as a Deputy of the Pine County Sheriff's Department.

11. Defendant Dan Vosika ("Vosika"), upon information and belief, was at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as a Deputy of the Pine County Sheriff's Department.

12. Defendant John Melvin ("Melvin"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as an Officer of the Minnesota Department of Corrections.

13. Defendant Millicent Tompa ("Tompa"), upon information and belief, was at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly

appointed and acting in her individual capacity as an Agent of the Federal Bureau of Investigation.

14. Defendant Sean Huls ("Huls"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as a Sergeant of the University of Minnesota-Duluth Police Department.

15. Defendant Dean Grothem ("Grothem"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as a Trooper of the Minnesota State Patrol.

16. Defendant Elke Hobus ("Hobus"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

17. Plaintiff will refer to the individual Defendants (with the exception of the "Supervisor Defendants" defined below), collectively as the "Defendant Law-Enforcement Personnel," "Individual Defendants," or "Defendant Individuals."

18. Defendants John and Jane Does (1-50), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting in their individual capacities as law-enforcement supervisors of the Defendant Entities.

19. Plaintiff will refer to the Defendants with supervisory authority over the Individual Defendants, including any John and Jane Does with such supervisory authority, collectively as the "Defendant Supervisors" or "Supervisor Defendants."

## FACTUAL ALLEGATIONS

### I. Rasmusson Served Honorably as a Law-Enforcement Officer

20. In 1996, Rasmusson graduated from the police academy at Range Technology College in Hibbing, Minnesota. Her fellow classmates elected her as a Community Service Sergeant for their class.

21. Immediately after graduation, in May 1996, she became a park ranger for the City of Eden Prairie, Minnesota.

22. In December 1996, Rasmusson became a police officer for the Eden Prairie Police Department. She worked as a patrol officer.

23. Rasmusson was injured in the line of duty on June 6, 1999, while on a medical emergency call. During that call, she needed to move some furniture, and, while doing so, snapped her coccyx (tail bone).

24. In March 2000, Rasmusson underwent surgery related to that injury where her coccyx and partial sacrum were removed.

25. Despite the injury and surgery, Rasmusson returned to duty.

26. In 2001, Rasmusson became a police officer for the City of St. Paul, Minnesota. St. Paul requires lateral hires such as Rasmusson to attend their police academy. While there, Rasmusson became the first female academy president in the department's history. She gave her St. Paul Police Academy class commencement speech.

27. In St. Paul, Rasmusson worked as a patrol officer in the West District, commonly known as the "Frogtown" neighborhood.

28. In 2003, Rasmusson began to experience numbness in her leg and had difficulty sitting. She was diagnosed with nerve damage and an unstable pelvis. Based on this diagnosis, she was granted a full-medical retirement on December 17, 2003.

29. Rasmusson was deeply disappointed that she had to retire. Until the revelation of the massive invasion of privacy in this case, retirement was one of the worst things to happen in her life.

30. In 2004, Rasmusson moved to her rural home in northern Minnesota.

31. Rasmusson was never disciplined while on the force.

32. Rasmusson was highly regarded police officer and served with honor.

33. Rasmusson was proud to serve as a police officer.

## II. Over 140 Minnesota Law Enforcement Officers Viewed Rasmusson's Private Information Outside the Scope of Any Investigation or Official Police Business

34. As early as 2005, law enforcement officers began knowingly looking up Rasmusson's private information on the Department of Vehicle Services' ("DVS") database.

35. The officers knowingly viewed Rasmusson's private personal and highly-restricted personal information from her State-issued driver's license including her home address, color photograph or image, and driver identification number.

36. The policy of the State of Minnesota is to uphold the provisions of the law, both state and federal, and to protect and safeguard the privacy rights of the State's citizens and inhabitants, including its drivers' privacy rights, and including those rights as are required to be protected by federal law, and in particular, it is the policy of the State of Minnesota to comply with the provisions and requirements of the DPPA. This policy is even set forth in the driver's license application in statutory language with proper citation to that federal statute.

37. Rasmusson began having suspicions that law enforcement officers were taking an uncomfortable interest in her starting approximately in 2007. She had recently divorced, and numerous officers who asked her for dates knew where she lived or what kind of car she drove.

38. In mid-2009, Rasmusson began to distance herself from law-enforcement get-togethers and from police officers, even those who were her former colleagues and those whom she considered her friends. More and more she began to live a secluded, even hermit-like, reclusive existence.

39. On May 5, 2010, Rasmusson was pulled over for a potential speeding violation by a Minneapolis police officer. Although the officer did not issue a citation against her, three other squad cars arrived on the scene and then left without performing any known law enforcement duties.

40. In early July 2010, Rasmusson changed her cell phone number and personal email address, and moved from Lakeville back to northern Minnesota. She told few people of her move and ceased contact with the majority of police acquaintances from then on.

41. Based in part on these foregoing incidents, Rasmusson contacted the Minnesota Department of Public Safety ("DPS") DPS to inquire whether law enforcement officers had been viewing her private information. She asked that only those officers who had run her name—as opposed to her license plates—on the DVS computer database be identified.

42. On August 30, 2011, she was unpleasantly surprised, even horrified to learn from DPS that it had determined that law-enforcement officers from 18 different departments and agencies had reviewed her private driver's license information since 2007. She became physically ill upon learning that fact; she pulled over, opened her car door, and vomited.

43. In October 2011, she learned through the press that approximately 100 law-enforcement officers had accessed her private driver's license information approximately 400 times in the last four years, from 2007 through the fall of 2011.

44. Upon learning of the sheer volume of intrusions, Rasmusson again became physically sick.

45. During Phase One discovery, Rasmusson was able to determine that, since 2005, approximately 144 law-enforcement personnel from 23 entities in Minnesota knowingly accessed her private personal driver's license information on approximately 554 occasions without a permissible purpose.

46. Rasmusson believes that even more unauthorized and knowing accesses and viewings will occur in the future if the policies of the Entity Defendants and other police departments and law enforcement agencies similarly situated are not changed to bring the actual custom and practice of these Entity Defendants and others similarly situated into compliance with their own written rules, with the rules of the Department of Public Safety, and with federal law, including the DPPA. In fact, recent events have indicated that knowing, unauthorized accesses and disclosures of the personal, private information of Minnesota citizens and drivers has continued at an alarming pace, and that as many as half of Minnesota's law enforcement personnel may be engaging in this practice.

47. In November 2011, DPS informed Rasmusson's counsel that it was, in fact, investigating 26 entities and their employees regarding this illegal conduct.

48. At the request of Rasmusson's counsel, DPS provided a list of the entities whose personnel had viewed her private information.

49. As part of Phase One Discovery, for each access of Rasmusson's private, personal information, DPS has provided DVS audits identifying the date, time, name of the law-enforcement personnel and entity where the personnel were employed. The BCA audits do not contain the names of the law-enforcement personnel.

50. As part of Phase One Discovery, many entities have indicated whether they believe their law-enforcement personnel had a permissible or law-enforcement related purpose for obtaining, using or disclosing Rasmusson's private information.

51. Included in the audits provided by DPS to Rasmusson's counsel were personnel from law-enforcement departments associated with the following entities:

- City of Anoka
- City of Bloomington
- City of Burnsville
- City of Coon Rapids
- City of Cottage Grove
- City of Eagan
- City of Eden Prairie
- City of Fridley
- City of Golden Valley
- City of Hopkins
- City of Inver Grove Heights
- City of Isanti
- City of Lakeville
- City of Mendota Heights
- City of Minneapolis
- City of Minnetonka
- City of Princeton
- City of Red Wing
- City of Rosemount
- City of St. Paul
- City of St. Peter
- City of South St. Paul
- City of Woodbury
- Chisago County
- Dakota County
- Dakota County Comm Center
- Faribault County
- Pine County
- Ramsey County
- Washington County
- Metro Transit
- University of Minnesota (Duluth Campus)
- Federal Bureau of Investigation

52. At the time of the filing of this proposed First Amended Complaint (Third Revision), Rasmusson has settled this matter with various defendants.

53. The chart attached to this First Amended Complaint (Third Revision) as Exhibit A summarizes the number of times law-enforcement personnel from the non-settling entities accessed Rasmusson's driver's license information without a permissible, law-enforcement related reason, as indicated in the DPS audits, Phase One Discovery responses and subpoena responses.

54. Plaintiff incorporates Exhibit A into her First Amended Complaint (Third Revision) as though fully set forth in this paragraph.

55. On information and belief, the Individual Defendants primarily used Rasmusson's name, not her license plate number, to look up her private, personal information.

56. By letter dated January 26, 2012, the Minnesota Department of Public Safety admits that Minnesota State Patrol Trooper Dean Grothem received a written reprimand for unauthorized use of the database related to Rasmusson.

57. Grothem's written reprimand specifically states that he was being disciplined "for accessing private information in the DVS database without a legitimate law enforcement need."

58. During Phase One Discovery, Chisago County did not provide a permissible law-enforcement-related reason for each access of Rasmusson's private, driver's license information by Belisle.

59. During Phase One Discovery, the Minnesota Department of Corrections did not provide a permissible law-enforcement-related reason for each access of Rasmusson's private, driver's license information by Melvin.

60. During Phase One Discovery, the Federal Bureau of Investigation did not provide a permissible law-enforcement-related reason for each access of Rasmusson's private, driver's license information by Tompa.

61. Pine County did not provide a permissible, law-enforcement-related reason for each access of Rasmusson's private, driver's license information by Fjosne, Lawrence or Vosika.

62. Pine County claimed that Fjosne accessed Rasmusson's information as part of a wide-range license plate check.

63. Yet, according to the DPS audit, Fjosne used the DVS driver's license database, not a license plate search, to access Rasmusson's information. Based on the information provided, Rasmusson cannot perceive any permissible purpose for Fjosne to have accessed her driver's license information by name rather than by license plate as claimed.

64. During Phase One Discovery, the University of Minnesota-Duluth did not provide a permissible, law-enforcement-related reason for each access of Rasmusson's private, driver's license information by Huls.

65. The DPS audits list Hobus as working for the City of Red Wing.

66. The City of Red Wing claims that Hobus never worked for it.

67. The City of Red Wing claims that it was informed by the DPS that Hobus worked as a deputy registrar, which was a private business.

68. The Supervisor Defendants are not presently known. Plaintiff anticipates that the yet-to-be-named Supervisor Defendants who should have monitored, prevented and stopped the unauthorized access to Rasmusson's information will become known through discovery.

69. The login page to the DVS website includes the following admonition:

> Access to this service is for authorized personnel only conducting official business. If you do not have the express authorization, you

> must exit now or face the consequences of violating Chapter 13 of the Minnesota Statutes and other laws. Further, the State of Minnesota prohibits unauthorized access, disclosure, duplication, modification, diversion, destruction, loss, misuse, or theft of its information in accordance with the Minnesota Statutes Sections 609.87 – 609.891.
>
> DVS collects and maintains electronic access data. This data may be used and disseminated for the purpose of evaluating electronic government services; to prevent unlawful intrusions into government electronic systems; or as otherwise provided by law.

70. On information and belief, the Individual Defendants' training included admonitions against viewing private driver's license information for unofficial purposes.

71. Whatever training, monitoring, or inquiry into the officers' usage of the information systems has been adopted is woefully inadequate to ensure that access is used properly and lawfully.

72. On information and belief, despite this training, Defendant Entities and Defendant Supervisors allowed their employees, including but not limited to the Individual Defendants, to view Plaintiff's private driver's license information for unlawful purposes.

73. On information and belief, Defendant Entities and Defendant Supervisors permitted, condoned, or acquiesced in this illegal access to Plaintiff's private information, and knew or should have known that it was occurring.

74. On information and belief, this illegal access occurs with regularity not only of Plaintiff's private information, but of other Minnesota drivers' private information.

75. Defendant Entities and Defendant Supervisors have lax policies or lax enforcement of these policies that allow for these intrusions.

76. Defendant Entities and Defendant Supervisors either have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers.

77. The extent of this illegal access appears to be widespread and pervasive throughout departments, and is a custom and practice. This is demonstrated by the tolerance of this practice and the customary disregard of punishment for violations, such as a prosecution that was dismissed when the officer's attorney complained that the prosecution was akin to "using a sledge hammer to kill a fly" or words to that effect. Further evidence of the custom and practice can be found in actual statements made by current officers, one of whom was quoted in a magazine article about the illegal access into Rasmusson's privacy as saying that "every single cop in the state has done this. Chiefs on down." ; and based on actual statements made by former officers, one of whom was quoted in a magazine article about the illegal access into Rasmusson's privacy as saying that "[y]ou used to look up people without a second thought. You'd look up old friends from high school or just someone you used to know." As noted earlier, a recent report by a Minnesota state agency indicates that as many as half of all Minnesota law enforcement personnel may be engaging in this custom and practice.

78. Before publicity surrounding Rasmusson's situation, there was little or no training by the Entity Defendants regarding appropriate use of the DPS Databases or what was a permissible purpose for viewing drivers' license information under the DPPA.

79. Before publicity surround Rasmusson's situation, law-enforcement personnel throughout Minnesota commonly looked up driver's license information for personal reasons.

80. Each law-enforcement personnel has a password allowing that individual access to the DPS Database. Law-enforcement personnel can access the DPS Databases from any computer with internet access.

81. On further information and belief, this illegal access to drivers' license information occurs disproportionately to women.

82. When Defendant law-enforcement personnel viewed Rasmusson's private information, they did not do so to carry out official police functions.

83. Rasmusson committed no crimes that would authorize the unauthorized access of her private drivers' license information.

84. The Individual Defendants obtained Rasmusson's personal information without probable cause or reasonable suspicion.

85. On a small handful of occasions, Rasmusson asked certain law-enforcement personnel to view her driver's license information for the express purpose of determining if the database had posted her change of address or had listed the automobile she was presently driving. None of the claims in this suit relate to those few instances.

86. Rasmusson never waived the protections of the DPPA.

## III. Rasmusson Has Been Harmed By This Intrusion Into Her Private Life

87. The sheer volume of these intrusions into her private life demonstrates that law-enforcement personnel are unfairly hostile toward Rasmusson's privacy and safety.

88. As a result of this invasion of privacy, Rasmusson does not feel comfortable going to public places where police officers are likely to be around and has lost her sense of freedom including her freedom to travel and enjoy public places.

89. As a result of this invasion of privacy, Rasmusson has become a recluse and was forced to live like a hermit.

90. As a result of this invasion of privacy, Rasmusson feels she has lost any control over the privacy in her life.

91. As a result of this invasion of privacy, Rasmusson has shut down her social media accounts.

92. As a result of this invasion of privacy, Rasmusson has installed a security gate and an alarm system on her property.

93. As a result of this invasion of privacy, Rasmusson has changed and unlisted her home and mobile telephone number.

94. As a result of this invasion of privacy, Rasmusson has changed her email address.

## COUNT I

*(Against all Defendants including Individual, Supervisor and Entity Defendants, including John, Jane Does, for Violations of the DPPA, 18 U.S.C. § 2721, et seq.)*

95. Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 94 as though fully set forth in this Paragraph 95.

96. Rasmusson provided personal information to the DPS including her address, color photograph, date of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

97. The DPS Database also maintained Rasmusson's driving record.

98. Rasmusson did not provide her consent for any of the Defendant Individuals to obtain, disclose or use, or for any of the Defendant Entities or Defendant Supervisors to disclose or to allow Defendant Individuals to obtain, disclose or use, her private information for anything but official law-enforcement business for any of the occasions listed in the attached Exhibit A.

99. Intentionally obtaining, disclosing or using driver's license information without an authorized purpose is a violation of the DPPA. The statute provides for criminal fines and civil penalties. 18 U.S.C. §§ 2723, 2724.

100. The DPPA provides redress for violations of a person's protected interest in the privacy of her motor vehicle records and the identifying information therein.

101. The Defendants, each of them, have knowingly invaded Rasmusson's legally protected interests under the DPPA.

102. According to the Department of Vehicle Services and the Defendant Entities, the Individual Defendants knowingly accessed, disclosed or used Rasmusson's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

103. None of the Individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Rasmusson's private information.

104. By the actions described above, each Defendant Individual law-enforcement personnel was acting within the scope of his or her employment when he or she obtained, disclosed or used Rasmusson's personal information from the DPS Databases for an impermissible purpose.

105. The Individual Defendants knew that their actions related to Rasmusson's personal information were in violation of the DPPA.

106. The Defendant Entities and Defendant Supervisors knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Rasmusson's private personal information by the Individual Defendants.

107. The Individual Defendants knowingly used the Defendant Entities' computers, passwords and passcodes to access Rasmusson's private information.

108. The sheer volume of law-enforcement personnel that obtained, disclosed or used Rasmusson's private personal information, especially given Rasmusson's lack of a criminal record, makes apparent that Defendants' use was not permissible.

109. The Defendant Entities are each vicariously liable for the acts of Defendant Individuals.

110. Rasmusson has suffered harm because her private information has been obtained unlawfully. Rasmusson suffered and continues to suffer harm by virtue of the increased risk that her protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose. This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

111. The Individual Defendants and Supervisor Defendants, each willfully and recklessly disregarded the law, entitling Rasmusson to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. section 549.20. Plaintiff is entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate. 18 U.S.C. § 2724(b).

112. In addition, under the DPPA, Plaintiff is entitled to a baseline liquidated damages award of at least $2,500 for each violation of the DPPA. 18 U.S.C. § 2721(b)(1). Rasmusson need not prove actual damages to receive said liquidated damages.

**COUNT II**

*(Against Individual Defendants, for Violation of 42 U.S.C. § 1983, with the exception of Hobus)*

113. Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 112 as though fully set forth in this Paragraph 113.

114. At no time did Rasmusson behave in a manner that would provide any legal justification for the above-described invasion of her privacy.

115. The DPPA establishes that obtaining an individual's driver's license information without a legitimate purpose constitutes an illegal search under the meaning of the Fourth Amendment to the Bill of Rights.

116. The Individual Defendants' viewing of Rasmusson's personal information was unauthorized, unjustified, and excessive, and violates the Fourth Amendment, the laws of the United States and the laws of the State of Minnesota.

117. By the actions described above, each Individual Defendant Law-Enforcement Personnel, acting under color of state law, violated and deprived Rasmusson of her clearly established and well-settled civil right to be free from an unconstitutional search.

118. The acts of each Defendant Law-Enforcement Personnel, acting under the color of state law, constituted an invasion or repeated invasions of Rasmusson's clearly-established privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the United States Constitution, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

119. The DPPA creates an individual right to privacy in a person's driver's license information, thereby prohibiting unauthorized accessing of all persons' information, including Rasmusson's information.

120. Each individual law-enforcement personnel, acting under color of state law, knew that his or her actions violated and deprived Rasmusson of her clearly established statutory rights under the DPPA.

121. Each Individual Defendant law-enforcement personnel deprived Rasmusson of her federal statutory rights and civil rights maliciously or by acting with reckless disregard for whether Rasmusson's rights would be violated by his or her actions.

122. Each Individual Defendant law-enforcement personnel was deliberately indifferent to Rasmusson's statutory and civil right to be free from illegal searches, invasions of privacy and the unauthorized accessing of her private driver's license information.

123. As a direct and proximate result of the acts and omissions of the above-named Individual Defendants, Rasmusson endured physical and mental suffering, and was damaged in an amount yet to determined, but believed to be well in excess of One Million ($1,000,000) Dollars.

124. Punitive damages are available against Individual Defendant law-enforcement personnel for their reckless and callous disregard for Rasmusson's rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirement for punitive damages set forth in Minn. Stat. § 549.20.

125. Plaintiff is entitled to recovery of her costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT III

*(Against Entity Defendants and Supervisor Defendants, including John and Jane Does, for violation of 42 U.S.C. § 1983)*

126. Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 125 as though fully set forth in this Paragraph 126.

127. The Individual Defendants' numerous accesses of Rasmusson's private information are not unique, but one example of how frequently such law-enforcement agencies

customarily violate the DPPA by accessing private driver's license information of persons without having any legitimate or permissible reason for doing so.

128. Recently, in a magazine article about the illegal access into Rasmusson's private information, a current officer, speaking anonymously to avoid retaliation, stated that every officer does it, including the chiefs of police. In that same article, another former officer stated that the practice was widespread as a form of social media, simply to look up former friends or acquaintances.

129. In addition, persons familiar with police departments and those involved in teaching supervisors how to train and hold accountable their subordinate law-enforcement personnel have been told by those supervisors that the unlawful and impermissible accessing of private information is among the most frequently committed wrongs by police, for which they are seldom if ever held accountable.

130. The foregoing information, other information to be presented at trial, and evidence reasonably likely to be determined after full discovery demonstrate that the improper access of citizens' driver's license information by Defendant Law-Enforcement Personnel for their own personal and private uses, obtained by accessing that information through the computerized information storage system kept by the State for official purposes only, is an official custom or practice well known to Defendant Supervisors.

131. These customs and practices by Defendant Law-Enforcement Personnel are at variance with the written rules set down by the Entity Defendants, but these formal rules are widely and knowingly disregarded.

132. Given the municipalities' failure to monitor and enforce their rules, the aforementioned customs and practices are attributable to the municipalities themselves, including the Entity Defendants herein.

133. The Defendant Entities and the Defendant Supervisors of the law-enforcement personnel accessing this information knew or should have known of this and other unlawful, improper, unjustified, and impermissible access to private information by law-enforcement personnel.

134. The prevalence of this custom, the lack of monitoring regarding these access practices and the failure to take action to stop or prevent these practices, demonstrate the state of mind of Defendant Supervisors and municipal officials of the Entity Defendants. These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiff, whose information has been wrongfully accessed.

135. The Defendant Entities, in their official capacity, are directly liable for the custom and practice of the widespread illegal access of citizens' driver's license information. The Supervisor Defendants, up to and including the chief police officers and sheriffs employed by each Entity Defendant, are liable in their individual capacity. Defendants' liability is due to their actual and constructive knowledge of this practice, their failure to institute any process for monitoring and preventing it and their deliberate indifference to the federal rights of those persons, including Plaintiff, whose information has been and continues to be wrongfully accessed.

136. In addition, the Defendant Supervisors of the law-enforcement personnel, up to and including the chief police officer in each of the Defendant Entities, are liable in their

individual capacities for the failure to train, monitor, supervise, and properly discipline the officers who are improperly and unlawfully accessing the private driver's license information of citizens, including Plaintiff, without a proper, lawful, permissible, justifiable purpose for doing so. This pattern of failure to train, monitor, supervise, and discipline demonstrates the state of mind of these Defendant Supervisors and a deliberate indifference to the rights of the citizens and others whose information has been so widely accessed, including Plaintiff.

137. The federal rights of the citizens, including Plaintiff, whose information is improperly accessed, are held in light regard by many if not most of the Defendant Supervisors and by the Defendant Entities themselves.

138. Defendants' lack of concern evidences their deliberate indifference both to the problem of the unauthorized access and to the impact of the unauthorized access on the federal rights of the citizens, including Plaintiff, who would often be unaware of that access.

139. Defendants' lack of concern is evidenced by the failure of most Defendant Entities to take any sort of corrective action upon learning that multiple improper, unlawful, unjustified accesses of Plaintiff's information had taken place. Defendants have also consistently refused to fully involve Plaintiff, keep her fully informed of the progress of the investigation into the persons accessing her information, or to advise her of their identities, their reasons for accessing her information, their knowledge of Plaintiff, and any discipline imposed on them for their improper and illegal conduct.

140. The manner in which the investigation was handled by the Entity Defendants and Supervisor Defendants provides little expectation that these and other law-enforcement personnel will cease accessing Plaintiff's private information and the private information of other persons similarly situated to Plaintiff, without a justifiable, permissible basis.

141. To the best of Plaintiff's knowledge, no system has been established by the Entity Defendants and Supervisor Defendants to monitor the regular access of the DPS Databases by law-enforcement personnel.

142. To the best of Plaintiff's knowledge, no reviews have taken place of other accesses of the DPS Databases by these same law-enforcement personnel, or of other officers and employees in the Defendant Entities.

143. To the best of Plaintiff's knowledge, no attempt has been made by the Entity Defendants and Supervisor Defendants to protect and safeguard the rights of other persons' DPS Database information.

144. To the best of Plaintiff's knowledge, no attempt has been made by the Entity Defendants and Supervisor Defendants to provide redress and assurance to the persons, including Plaintiff, whose DVS information has been wrongfully accessed by the Defendant Law-Enforcement Personnel named in this Complaint, or by other officers in the municipalities named in this Complaint.

145. Defendants' accesses have been widely discussed among the Defendant Law-Enforcement Personnel committing the accesses as well as among other personnel in the Defendant Entities – all of which have damaged Plaintiff and her reputation, including but not limited to her reputation as a single woman.

146. The reputational damage alone to Plaintiff, as well as the knowledge that this activity is not merely unlawful but a federal crime, should have been enough to ensure that Plaintiff's concerns listed in the preceding paragraphs were addressed by Defendants in a meaningful fashion. Holding accountable the law-enforcement personnel engaged in an unlawful activity would have been an important step in eliminating this custom and practice of

permitting the widespread illegal accessing of Rasmusson's information; yet nothing meaningful in this regard has been accomplished, and no prosecutions have been initiated to the best of Plaintiff's knowledge.

147. As a direct and proximate result of the acts and omissions of the above-named Defendant Entities and Defendant Supervisors, Rasmusson has endured and continues to endure physical and mental suffering, and has been damaged in an amount yet to determined and of a continuing nature, but believed to be well in excess of One Million ($1,000,000) Dollars.

148. Punitive damages are available against Defendant Supervisors for their reckless and callous disregard for Rasmusson's rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

149. Plaintiff is entitled to recovery of her costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

**COUNT IV**

*(Against All Defendants, including John and Jane Does, for Common Law Invasion of Privacy)*

150. Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 149 as though fully set forth in this Paragraph 150.

151. By improperly obtaining Rasmusson's private personal information for impermissible reasons, Defendants intentionally intruded upon the solitude or seclusion of Rasmusson's private affairs and concerns.

152. The Defendants' intrusion would be highly offensive to a reasonable person.

153. The Defendants' intrusion caused Rasmusson to suffer severe emotional distress and physical harm.

154. The Defendants' intrusion was intended to cause Rasmusson to suffer severe emotional distress and physical harm, and was made with either actual or legal malice, or with reckless disregard of her rights and her privacy.

155. Plaintiff is entitled to tort damages for Defendants' invasion of privacy.

**JURY DEMAND**

156. Plaintiff demands a jury trial as to all issues of fact herein properly triable to a jury under any statute or under common law.

WHEREFORE, Plaintiff Anne Marie Rasmusson prays for judgment against the Defendants as follows:

1. A money judgment against all the Defendants for liquidated, actual and compensatory damages in an amount in excess of One Million ($1,000,000) Dollars and punitive damages in an amount to be determined by the jury, together with her costs, including reasonable attorney fees, under 42 U.S.C. § 1988, the DPPA, and other applicable laws, and prejudgment interest;

2. Actual damages, punitive damages, attorneys' fees and other litigation costs and such other preliminary and equitable relief as the court determines to be appropriate under 18 U.S.C. § 2724(b);

3. Liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2721(b)(1);

4. An injunction, permanently enjoining all Defendants from viewing Plaintiff's private information in violation of the DPPA, unless necessary for law enforcement purposes;

5. A permanent injunction, barring Defendant Individuals from trespassing or instructing proxies to trespass on Plaintiff's property or otherwise harass her or infringe in any way on her privacy and her right against the invasion of her privacy;

6. A permanent injunction, allowing Plaintiff to use a post-office box in place of an address on her Minnesota Driver's License; and,

7. For such other and further relief as this Court deems just and equitable.

**SAPIENTIA LAW GROUP PLLC**

Dated: March 15, 2013

s/Jonathan A. Strauss
Jonathan A. Strauss (#0279602)
Lorenz F. Fett (#196769)
Sonia Miller-Van Oort (#278087)
Kenneth H. Fukuda (#0389301)
12 South Sixth Street, Suite 1242
Minneapolis, MN 55402
(612) 756-7100
Fax: 612-756-7101
jons@sapientialaw.com
larryf@sapientialaw.com
soniamv@sapientialaw.com
kennf@sapientialaw.com

**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT A TO FIRST AMENDED COMPLAINT (Third Revision)

**Rasmusson v. City of Bloomington, et al.**
**Civ File No. 12-cv-632 (SRN/JSM)**

| Entity | Individual Defendant | Date Accessed | Time Accessed |
|---|---|---|---|
| Chisago Cnty SO | Jay Belisle | 02/04/06 | 20:51:00 |
| | | 02/04/06 | 20:52:00 |
| | | 02/04/06 | 20:54:00 |
| | | 02/08/06 | 20:26:00 |
| | | 02/08/06 | 20:31:00 |
| | | 02/23/06 | 23:43:00 |
| | | 04/13/06 | 20:58:00 |
| Dept of Corrections | John Melvin | 05/20/08 | 15:45:00 |
| | | 05/20/08 | 15:46:00 |
| | | 05/20/08 | 15:48:00 |
| | | 05/20/08 | 15:49:00 |
| | | 05/20/08 | 15:49:00 |
| FBI Mpls | Millicent Tompa | 06/15/06 | 10:21:00 |
| | | 04/17/07 | 7:25:00 |
| MN State Patrol | Dean Grothem | 01/03/11 | 13:56:00 |
| Pine Cnty SO | Blake Fjosne | 04/11/11 | 19:27:00 |
| | Rebecca Lawrence | 07/11/06 | 14:01:00 |
| | Dan Vosika | 11/16/06 | 7:37:00 |
| | | 11/16/06 | 7:38:00 |
| | | 11/22/06 | 9:49:00 |
| | | 12/07/06 | 10:55:00 |
| | Elke Hobus | 11/08/06 | 18:01:00 |
| | | 01/10/07 | 15:23:00 |
| | | 11/29/07 | 22:02:00 |
| UMD PD | Sean Huls | 09/22/06 | 0:55:00 |
| | | 09/22/06 | 1:04:00 |
| | | 09/22/06 | 1:04:00 |
| | | 09/22/06 | 1:05:00 |
| | | 09/22/06 | 2:39:00 |
| | | 09/22/06 | 2:39:00 |
| | | 09/27/06 | 17:56:00 |
| | | 12/18/06 | 21:53:00 |
| | | 01/03/07 | 7:51:00 |