## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Anne Marie Rasmusson,<br><br>                    Plaintiff,<br><br>v.<br><br>Chisago County, et al.,<br><br>                    Defendants. | Case No. 12-cv-0632 (SRN/JSM)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Jonathan A. Strauss, Lorenz F. Fett, Jr., Sonia Miller-Van Oort, and Kenneth H. Fukuda, Sapientia Law Group PLLC, 12 South Sixth Street, Suite 1242, Minneapolis, MN 55402, on behalf of Plaintiff.

Margaret A. Skelton and Timothy A. Sullivan, Ratwik, Roszak & Maloney, P.A., 730 Second Avenue South, Suite 300, Minneapolis, Minnesota 55402, for Defendants Chisago County, Pine County, Jay Belisle, Blake Fjosne, Rebecca Lawrence, and Dan Vosika.

Philip G. Villaume and Lisa McLeod Lofquist, Villaume & Schiek, P.A., 2051 Killebrew Drive, Suite 611, Bloomington, Minnesota 55425, for Defendant Millicent Tompa.

SUSAN RICHARD NELSON, United States District Judge

### I.      INTRODUCTION

        This matter is before the Court on Defendants Chisago County, Pine County, Jay

Belisle, Blake Fjosne, and Rebecca Lawrence's Motion to Dismiss [Doc. No. 106];

Defendant Dan Vosika's Motion to Dismiss [Doc. No. 121]; and Defendant Millicent

Tompa's[1] Motion to Dismiss or for Judgment on the Pleadings [Doc. No. 97].  For the

reasons set forth below, the Court grants these motions.[2]

## II.   BACKGROUND

Plaintiff Anne Marie Rasmusson ("Plaintiff") initially filed this action on March 12,

2012.  (See Compl. [Doc. No. 1].)  On March 15, 2013, Plaintiff filed a First Amended

Complaint (Third Revision) ("Amended Complaint") in which she added new parties,

including Defendants Chisago County, Pine County, Jay Belisle, Blake Fjosne, Rebecca

Lawrence, Dan Vosika (collectively, the "County Defendants"), and Millicent Tompa.

(First Amended Complaint (Third Revision) ("Am. Compl.") ¶¶ 5–11, 13 [Doc. No. 90].)

In Count I of her Amended Complaint, Plaintiff asserts a claim under the Driver's Privacy

Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq., against all defendants.  (Id. ¶¶ 95–112.)

In Counts II and III, Plaintiff brings claims under 42 U.S.C. § 1983 against the individual

defendants and the entity and supervisor defendants, respectively.  (Id. ¶¶ 113–49.)  And, in

Count IV, Plaintiff asserts a claim for common law invasion of privacy against all

defendants.  (Id. ¶¶ 150–55.)

---

[1]     Based on statements made by counsel for Defendant Millicent Tompa at the
hearing on this matter and based on Defendant Tompa's motion papers, it appears that
Defendant Tompa's correct last name is "Kirby."  However, for purposes of consistency
with the Amended Complaint and the docket in this matter, the Court will continue to
refer to her as "Defendant Tompa."

[2]     In their proposed order, Defendants Chisago County, Pine County, Belisle, Fjosne,
Lawrence, and Vosika, contemplate that the Court's granting of their motion will dispose
of all claims except for a single claim under Count I against Defendant Fjosne.  However,
they do not contest Plaintiff's allegation that Fjosne was an employee of Pine County at
the time of the acts alleged in the First Amended Complaint.  (See Am. Compl. ¶ 9 [Doc.
No. 90].)  Therefore, as discussed herein, the Court finds that Plaintiff's claim against
Defendant Fjosne under Count I and Plaintiff's claim against Pine County under Count

Plaintiff's claims are centered on allegations that law enforcement personnel viewed her private driver's license information in the Minnesota Department of Vehicle Services ("DVS") driver's license database without a legitimate purpose.  (See id. ¶¶ 1, 34, 95–155.) Specifically, Plaintiff alleges that she "began having suspicions that law enforcement officers were taking an uncomfortable interest in her starting approximately in 2007" because "numerous officers who asked her for dates knew where she lived or what kind of car she drove."  (Id. ¶ 37.)  In addition, Plaintiff alleges that, on May 5, 2010, she was pulled over for a potential speeding violation and three other squad cars arrived and left without performing any law enforcement duties.  (Id. ¶ 39.)  Based on these suspicions and incidents, Plaintiff contacted the Minnesota Department of Public Safety ("DPS") and asked for the identity of officers who had run her name on the DVS database.  (Id. ¶ 41.)  On August 30, 2011, Plaintiff alleges that she learned from DPS that officers from 18 different departments and agencies had accessed her driver's license information since 2007.  (Id. ¶ 42.)  Plaintiff claims that, during discovery in this case, she learned that the defendants at issue in the present motions accessed her driver's license information without a permissible reason as follows:

---

I—to the extent that it is related to the actions of Defendant Fjosne—survive.

| Entity | Individual defendant | Date accessed | Number of times accessed |
|---|---|---|---|
| Chisago County | Jay Belisle | 02/04/06 | 3 |
| | | 02/08/06 | 2 |
| | | 02/23/06 | 1 |
| | | 04/13/06 | 1 |
| Pine County | Blake Fjosne | 04/11/11 | 1 |
| | Rebecca Lawrence | 07/11/06 | 1 |
| | Dan Vosika | 11/16/06 | 2 |
| | | 11/22/06 | 1 |
| | | 12/07/06 | 1 |
| Federal Bureau of Investigation | Millicent Tompa | 06/15/06 | 1 |
| | | 04/17/07 | 1 |

(Id. ¶ 53 & Ex. A.)

Plaintiff describes the driver's license information at issue in three paragraphs in her Amended Complaint.  First, she alleges that the law enforcement officers accessed her "private personal and highly-restricted personal information from her State-issued driver's license including her home address, color photograph or image, and driver identification number."  (Id. ¶ 35.)  Later, she states that she "provided personal information to the DPS including her address, color photograph, date of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license."  (Id. ¶ 96.)  She also asserts that the DPS database included her driving record.  (Id. ¶ 97.)

Defendants Pine County, Chisago County, Belisle, Fjosne, and Lawrence filed a partial motion to dismiss Plaintiff's Amended Complaint [Doc. No. 106] and a supporting memorandum [Doc. No. 108].  Defendant Vosika later joined in the motion [Doc. No. 121].  The County Defendants argue that the majority of Plaintiff's claims are barred by the applicable statutes of limitations, (see Defs. Pine County, Chisago County, Belisle, Fjosne,

and Lawrence's Mem. of Law in Supp. of Partial Mot. to Dismiss ("County Defs.' Supp.

Mem.") at 5–17 [Doc. No. 108]); DPPA violations are not actionable through § 1983,

(see id. at 17–19); the facts do not state the existence of an actionable violation of

Plaintiff's constitutional rights enforceable through § 1983, (see id. at 19–27); § 1983

cannot be used to enforce violations of state law, (see id. at 27); and Plaintiff has failed to

state a common law invasion of privacy claim, (see id. at 27–28).  Plaintiff filed an

opposition memorandum [Doc. No. 122], along with two affidavits and several exhibits

[Doc. Nos. 123–24], and County Defendants filed a reply brief [Doc. No. 132].

 In addition, Defendant Tompa filed a motion to dismiss or for judgment on the

pleadings [Doc. No. 97] and a supporting memorandum[3] [Doc. No. 133].  She argues that

she is entitled to qualified immunity from liability, (see Def. Tompa's Mem. in Supp. of

Mot. to Dismiss or for J. on the Pleadings ("Def. Tompa's Supp. Mem.") at 10–14 [Doc.

No. 133]); Plaintiff's DPPA and common law invasion of privacy claims are barred by the

applicable statutes of limitations, (see id. at 14–19, 24–25); and Plaintiff has failed to state

---

[3]     Plaintiff argues that Defendant Tompa's motion to dismiss should be denied for
failure to comply with Local Rule 7.1.  (See Pl.'s Mem. of Law in Opp. to Mot. to
Dismiss by Def. Tompa ("Pl.'s Opp. to Def. Tompa") at 6–9 [Doc. No. 142].)  Plaintiff
argues that Defendant Tompa failed to simultaneously file her memorandum of law with
her motion in accordance with Local Rule 7.1(c), and that she failed to meet and confer
as required by Local Rule 7.1(a).  (See id.)  Defendant Tompa filed her motion and notice
of motion on April 19, but she did not file her supporting memorandum until May 31.
While this separate filing technically violates Rule 7.1(c)'s requirement that the
documents be filed simultaneously, the memorandum was filed the requisite 42 days
prior to the hearing.  In addition, Defendant Tompa did file a belated meet-and-confer
statement [Doc. No. 147], in which she indicated that she engaged in a meet-and-confer
with opposing counsel on June 16 and 24.  Thus, the Court finds that Plaintiff has not
been so prejudiced as to warrant denial of Defendant Tompa's motion on these bases or
an award of attorney's fees as requested by Plaintiff, and the Court will consider the

a common law invasion of privacy claim, (see id. at 26–27).[4]  Plaintiff filed an opposition

memorandum [Doc. No. 142] and an affidavit [Doc. No. 143], and Defendant Tompa filed a

reply brief [Doc. No. 146].  Both the County Defendants' and Defendant Tompa's motions

were heard on July 12, 2013 [Doc. No. 150].

## III.   DISCUSSION

### A.   Standard of Review

Defendants move to dismiss Plaintiff's Amended Complaint, pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which

relief can be granted.  Defendant Tompa also moves for judgment on the pleadings pursuant

to Rule 12(c).  When evaluating a motion to dismiss, the Court assumes the facts in the

Complaint to be true and construes all reasonable inferences from those facts in the light

most favorable to Plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  However,

the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of

Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws

from the facts pled.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  In

addition, the Court ordinarily does not consider matters outside the pleadings on a motion to

dismiss.  See Fed. R. Civ. P. 12(d).  The Court may, however, consider exhibits attached to

the complaint and documents that are necessarily embraced by the pleadings, Mattes v.

---

merits of Defendant Tompa's motion.

[4]      Defendant Tompa also argued that Plaintiff failed to state a claim against her under
§ 1983.  (See Def. Tompa's Supp. Mem. at 20–23 [Doc. No. 133].)  However, Plaintiff's
§ 1983 claim against Defendant Tompa (Count II) has since been dismissed with
prejudice pursuant to the parties' stipulation [Doc. No. 145].  Therefore, the Court will
not address Defendant Tompa's arguments regarding § 1983.

ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public

records.  Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).[5]

        To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative level."

Id. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," will not pass muster.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(citing Twombly, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the claim]."  Twombly, 550

U.S. at 556.  These same standards apply to a motion for judgment on the pleadings.

Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009); Gallagher v. City of Clayton,

699 F.3d 1013, 1016 (8th Cir. 2012).

        **B.    The Claims**

        Plaintiff has failed to state a cognizable claim for relief in Counts II through IV of

her Amended Complaint, and the applicable statute of limitations bars most of the claims

---

[5]      In opposition to the County Defendants' motion to dismiss, Plaintiff submitted
copies of the following documents:  a pdf downloaded from the DPS website, (Strauss
Aff., Ex. A [Doc. No. 123-1]); several letters between counsel for Plaintiff and various
entities, (id., Exs. B–J); a letter from the Minnesota Department of Natural Resources to a
Minnesota resident unrelated to this case, (id., Ex. K); and an affidavit of an individual
unrelated to this case, (see Prozinski Aff. [Doc. No. 124]).  The Court may properly
consider the document obtained from the DPS website because it is a public record.
However, the Court will not consider the remainder of the documents because they are
neither public records nor the type of documents that are considered to be necessarily
embraced by the pleadings.  See Mattes, 323 F.3d at 697 n.4 (finding that a contract upon

asserted against the County Defendants and Defendant Tompa in Count I.  The Court will address the claims in that order.

### 1.    Section 1983 Claims

Counts II and III of Plaintiff's Amended Complaint state causes of action under 42 U.S.C. § 1983.  (Am. Compl. ¶¶ 113–49 [Doc. No. 90].)  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In Count II, Plaintiff alleges that the individual defendants in this lawsuit, acting under color of state law, violated her statutory rights under the DPPA, her constitutional rights under the Fourth and Fourteenth Amendments, and her rights under the laws of the State of Minnesota.  (See Am. Compl. ¶¶ 115–22.)  In Count III, Plaintiff alleges that the entity and supervisor defendants are liable for the individual defendants' custom and practice of improperly accessing information; their own failure to monitor and enforce the rules; and their failure to train, supervise, and impose proper discipline.  (See id. ¶¶ 130–36.)

The County Defendants assert four arguments relating to Plaintiff's § 1983 claims.  First, they argue that the § 1983 claims are barred by the applicable statute of limitations.  (See County Defs.' Supp. Mem. at 16 [Doc. No. 108].)  Second, they argue that Plaintiff's § 1983 claims based on their alleged DPPA violations fail because the DPPA is not separately enforceable under § 1983.  (See id. at 17–19.)  Third, the County Defendants

which a claim was based was embraced by the pleadings).

assert that Plaintiff's § 1983 claims based on alleged violations of her constitutional rights fail because Plaintiff has not stated a legally-cognizable deprivation of a constitutional right. (See id. at 19–27.)  Finally, the County Defendants argue that Plaintiff's § 1983 claims based on violations of Minnesota law fail because § 1983 cannot be used to enforce state law.  (See id. at 27.)  Because the Court agrees with the County Defendants' latter three arguments, each of which is dispositive, it declines to address the statute of limitations issue.

### a.    DPPA basis

Plaintiff's § 1983 claims fail to the extent that they are based on alleged violations of the DPPA.  As noted above, a plaintiff may generally use § 1983 to enforce federal statutory rights.  In order to determine "whether a statute creates an individually enforceable federal right," a plaintiff must demonstrate that "'(1) Congress intended the statutory provision to benefit the plaintiff; (2) the asserted right is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the provision clearly imposes a mandatory obligation upon the states.'"  Midwest Foster Care & Adoption Ass'n v. Kincade, 712 F.3d 1190, 1195 (8th Cir. 2013) (citation omitted).  A statute that meets these criteria is presumed to be enforceable under § 1983.  Id. at 1195–96 (citing Blessing v. Freestone, 520 U.S. 329, 341 (1997)).  However, "[a defendant] can rebut this presumption by showing either that Congress explicitly foreclosed a remedy under § 1983 or implicitly did so, 'by creating a comprehensive enforcement scheme that is incompatible with individual enforcement'" under § 1983.  Id. at 1196 (quoting Blessing, 520 U.S. at 341); see Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (8th Cir. 1999) ("Courts should presume

that Congress intended that the enforcement mechanism provided in the statute be exclusive.").

According to the U.S. Supreme Court, in the cases in which it has held that a § 1983 claim is available for violation of a federal statute, the federal statute provided no private judicial remedy. City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 121 (2005) (citations omitted). However, "the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which [the Court has] held that an action would lie under § 1983 and those in which [the Court has] held that it would not." Id. For example, in City of Rancho Palos Verdes v. Abrams, the Court found that enforcement of the Telecommunications Act ("TCA") through § 1983 is precluded because the TCA has a shorter limitations period than § 1983, requires judicial review on an expedited basis, and does not provide for attorney's fees and costs. Id. at 122–27.

Even if Plaintiff were able to demonstrate that the DPPA constitutes a protectable "right" under the relevant three-prong test and, therefore, that it is presumptively enforceable under § 1983, that presumption is rebutted because Congress has explicitly foreclosed a remedy under § 1983 by creating a comprehensive enforcement scheme. The DPPA makes the following remedies available in a civil action: (1) actual damages (not less than liquidated damages of $2,500), (2) punitive damages, (3) reasonable attorneys' fees and costs, and (4) other appropriate equitable relief. 18 U.S.C. § 2724(b). It also provides for criminal fines and civil penalties. Id. § 2723.

In addition, the private remedy contained in the DPPA's comprehensive enforcement scheme is more restrictive than that provided under § 1983, in terms of the category of persons from whom a plaintiff may seek a remedy and the period of time in which a plaintiff may seek a remedy.  First, like the DPPA, § 1983 allows for recovery of damages and injunctive relief, as well as costs and a reasonable attorney's fee, in a private cause of action.  See 42 U.S.C. §§ 1983, 1988(b).  However, while an individual may seek injunctive relief under § 1983 against a state official acting in his official capacity, the DPPA expressly excludes civil suits against states and state agencies.  See Heartland Acad. Cmty. Church v. Waddle, 427 F.3d 525, 530 (8th Cir. 2005) (stating, in a § 1983 case, that there is an exception to sovereign immunity for state officials acting in their official capacity "where the relief sought is prospective and not compensatory"); 18 U.S.C. § 2724(a) (stating that a "person" who violates the Act shall be liable); id. § 2725(2) (stating that, for purposes of the DPPA, "'person' means an individual, organization or entity, but does not include a State or agency thereof").

Second, as discussed in more detail below, DPPA claims are subject to a four-year statute of limitations.  On the other hand, the parties agree that the § 1983 claims in this case are subject to a six-year statute of limitations.  (County Defs.' Supp. Mem. at 5–6 [Doc. No. 108]; Pl.'s Mem. of Law in Opp. to Mot. to Dismiss by Defs. Pine County, Chisago County, Belisle, Fjosne, Lawrence, and Vosika ("Pl.'s Opp. to County Defs.") at 21 [Doc. No. 122].)  Thus, allowing Plaintiff to pursue her DPPA claim through § 1983

would allow her to enlarge the applicable statute of limitations. Accordingly, like the

TCA in City of Rancho Palos Verdes, the DPPA cannot be enforced through § 1983.

This Court's determination that Plaintiff may not use § 1983 to enforce her rights

under the DPPA is in line with decisions from several other courts, including multiple

district courts within the Eighth Circuit. For example, in Roberts v. Source for Public

Data, the U.S. District Court for the Western District of Missouri dismissed the plaintiffs'

claim because, "[g]iven [the DPPA's] comprehensive remedial scheme, the [c]ourt must

presume that Congress intended that the enforcement scheme it created in the DPPA

would be the exclusive remedy for violations, precluding resort to § 1983." 606 F. Supp.

2d 1042, 1046 (W.D. Mo. 2008). And, in Kraege v. Busalacchi, the U.S. District Court

for the Western District of Wisconsin found that § 1983 allows for injunctive relief

against state officials in their official capacities and, therefore, that the plaintiffs' § 1983

claim to enforce their rights under the DPPA was barred because the DPPA provided a

more restrictive private remedy. 687 F. Supp. 2d 834, 840 (W.D. Wis. 2009). Similarly,

in Nelson v. Jesson, a judge in this District noted that state officials acting in their official

capacity cannot be held liable for injunctive relief under the DPPA and went on to hold

that "the DPPA's remedial scheme, which is both comprehensive and more restrictive

than § 1983, expresses Congress's intent to preclude other means of enforcement." Civ.

No. 13-340 (RHK/JJK), 2013 WL 5888235, at *7 (D. Minn. Nov. 1, 2013); see also

Kiminski v. Hunt, Civ. No. 13-185 (JNE/TNL), Order [Doc. No. 66], at *24 (D. Minn.

Sept. 20, 2013) (finding that the DPPA precludes a § 1983 action because the inability to

sue state officials in their official capacity under the DPPA is "significant, especially in light of the statute's overall comprehensive remedial scheme").

Plaintiff urges the Court to follow two cases in which the courts have determined that the DPPA is separately enforceable under § 1983: Collier v. Dickinson and Arrington v. Richardson. (See Pl.'s Opp. to County Defs. at 28 [Doc. No. 122].) In Collier, the Eleventh Circuit Court of Appeals determined that the relief provided under the DPPA and § 1983 is "complementary" rather than "conflicting." 477 F.3d 1306, 1311 (11th Cir. 2007). The court did not examine the nature of the available remedies; instead, it merely stated generally that the DPPA did not create so many statutory remedies as to make it unlikely that Congress intended to preserve a § 1983 claim. Id. In Arrington, the U.S. District Court for the Northern District of Iowa similarly found that the remedial schemes of the two statutes are complementary. 660 F. Supp. 2d 1024, 1035 (N.D. Iowa 2009). In fact, that court found that the DPPA actually provides "more extensive" remedies than those available under § 1983. Id. at 1032. Thus, the court noted that Congress did not preclude a plaintiff from obtaining a remedy under the DPPA that is otherwise available under § 1983. Id. at 1035.

This Court respectfully disagrees with the reasoning set forth in Collier and Arrington because neither court addressed the fact that, under the DPPA, a plaintiff is precluded from obtaining relief from state officials acting in their official capacity (as opposed to the limited availability of such relief under § 1983), or the difference between the statutes of limitations applicable to each cause of action. As noted above, the Court

finds that these considerations, along with the comprehensive nature of the DPPA's remedial scheme, indicate Congress' intent to foreclose a remedy under § 1983. Therefore, Plaintiff's § 1983 claims as stated in Counts II and III of the Amended Complaint fail to the extent that they are based on an underlying DPPA violation.

### b. Federal constitutional bases

Plaintiff's § 1983 claims also fail to the extent that they are based on alleged violations of her constitutional rights. "The essential elements of a constitutional claim under § 1983 are (1) that the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, 673 F.3d 799, 805 (8th Cir. 2012) (citation omitted). Here, Plaintiff alleges that the individual County Defendants, acting under color of state law, violated her Fourteenth Amendment right to privacy, as well as her Fourth Amendment right to be free from an unconstitutional search, by obtaining her personal driver's license information without a legitimate purpose. (See Am. Compl. ¶¶ 116–18 [Doc. No. 90].) However, the facts alleged by Plaintiff do not raise a right to relief under either basis.

As for the Fourteenth Amendment:

"[T]o violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation . . . , or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." . . . . "To determine whether a particular disclosure satisfies this exacting standard, [the court] must examine the nature of the material . . . to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession."

Van Zee v. Hanson, 630 F.3d 1126, 1128 (8th Cir. 2011) (internal citations omitted).  Thus,

the "protection against public dissemination of information is limited and extends only to

highly personal matters representing 'the most intimate aspects of human affairs.'"  Eagle v.

Morgan, 88 F.3d 620, 625 (8th Cir. 1996) (citation omitted).  According to the Eighth

Circuit, these standards "set a high bar . . . and many disclosures, regardless of their nature,

will not reach the level of a constitutional violation."  Cooksey v. Boyer, 289 F.3d 513, 516

(8th Cir. 2002).  Similar to the Fourteenth Amendment standards, "[a] search occurs under

the Fourth Amendment when . . . 'the government violates a subjective expectation of

privacy that society recognizes as reasonable.'"  Arnzen v. Palmer, 713 F.3d 369, 372 (8th

Cir. 2013) (quoting Kyllo v. United States, 533 U.S. 27, 31–33 (2001)).

      The few courts that have analyzed these standards in the context of driver's license

information have found that an individual does not have a legitimate expectation of privacy

in such information.  For example, in Travis v. Reno, the court concluded that there is no

legitimate expectation of confidentiality—and, therefore, no constitutional right to

privacy—in an individual's name, address, telephone number, photograph, social security

number, driver identification number, and medical or disability information.  12 F. Supp. 2d

921, 925 (W.D. Wis. 1998), rev'd on other grounds, 163 F.3d 1000 (7th Cir. 1998); see also

Pryor v. Reno, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999) (stating that "there is no

constitutional right to privacy in motor vehicle record information"), rev'd on other

grounds, 528 U.S. 1111 (2000); Condon v. Reno, 155 F.3d 453, 464 (4th Cir. 1998) (stating

that motor vehicle record information "is the very sort of information to which individuals

do not have a reasonable expectation of privacy"), rev'd on other grounds, 528 U.S. 141

(2000).  Similarly, in Kiminski v. Hunt, a judge within this District determined that "[n]one

of that data qualifies as so extremely personal as to trigger constitutional—as opposed to

statutory—privacy protections."  Civ. No. 13-185 (JNE/TNL), Order [Doc. No. 66], at *25

(noting that "[n]ot even statutory protection existed for [driver's license record

information] until 1994, when Congress passed the DPPA"); see also Nelson, 2013 WL

5888235, at *5 (finding no reasonable expectation of privacy in the information the

plaintiff alleged was contained in his motor vehicle records, which included his name,

date of birth, driver's license number and status, address, photograph, weight, height, and

eye color).

    Plaintiff argues that the Supreme Court's decision in Maracich v. Spears, 133 S.

Ct. 2191 (2013), demonstrates "the importance of the privacy rights created by the

DPPA."[6]  (Pl.'s Opp. to Def. Tompa at 19 [Doc. No. 142].)  In that case, the Court

considered whether an attorney's solicitation of clients constitutes a permissible purpose

for disclosure under the DPPA.  See Maracich, 133 S. Ct. at 2195–96.  In doing so, it

noted that:

> If (b)(4) were read to permit disclosure of personal information whenever any
> connection between the protected information and a potential legal dispute
> could be shown, it would undermine in a substantial way the DPPA's purpose
> of protecting an individual's right to privacy in his or her motor vehicle
> records.

---

[6]    Plaintiff makes this argument in regard to whether Defendant Tompa asserted a
violation of a federal statutory right for purposes of a qualified immunity analysis.  (See
Pl.'s Opp. to Def. Tompa at 15–21 [Doc. No. 142].)  Even so, the Court will address the
relevance of this case to determining the existence of a constitutional right.

. . . .

An additional reason to hold that (b)(4) does not permit solicitation of clients is because the exception allows use of the most sensitive kind of information, including medical and disability history and Social Security numbers. To permit this highly personal information to be used in solicitation is so substantial an intrusion on privacy it must not be assumed, without language more clear and explicit, that Congress intended to exempt attorneys from DPPA liability in this regard.

Id. at 2200, 2202.  However, Maracich is not dispositive because the Court did not address whether an individual has a constitutional right to privacy in driver's license record information.  That issue was not before the Court, and the statements regarding privacy that the Court did make cannot be understood to refer to a constitutional right rather than to a statutory right.

While the Eighth Circuit has not ruled on this exact issue, either, it has determined that the disclosure of similar information is insufficient to state a claim for a violation of the constitutional right to privacy.  In McCaslin v. Campbell, the court determined that the plaintiff had not asserted a constitutional violation despite allegations that her driver's license information, social security number, bank account numbers, criminal record, previous landlords, previous names, and personal references were disclosed without her consent.  No. 95-4041, 1997 WL 148824, at *1 (8th Cir. Apr. 2, 1997).  The court found that much of the information was of public record and that "the remaining information did not involve the most intimate aspects of human affairs."  Id. at *2.  Therefore, the court affirmed the district court's dismissal of the plaintiff's claim under Rule 12(b)(6).  Id. at *1; see also Cooksey, 289 F.3d at 516 (finding that disclosure of the fact that an individual was

receiving psychological treatment for stress was "neither shockingly degrading [n]or egregiously humiliating"); Eagle, 88 F.3d at 628 ("Because [the plaintiff] has no legitimate expectation of privacy in the contents of his criminal history file, [the court] cannot agree that the officers violated his constitutional right when they engaged in an unwarranted search of this material.").

In this case, Plaintiff alleges a privacy interest in her driver's license information. However, the only information Plaintiff claims was accessed through her driver's license record was her address, color photograph, date of birth, weight, height, eye color, driver identification number, and driving record.  With the exception of Plaintiff's driving record, all of this information is included on the face of a driver's license, and individuals show their driver's licenses to strangers on a daily basis.  Moreover, much of this information can be obtained by looking at an individual or by reviewing public records.  Thus, the disclosure of this information cannot be considered shockingly degrading or egregiously humiliating. Nor could Plaintiff, based on the public nature of this information, legitimately expect that it would remain confidential.  Accordingly, as determined in Travis, Kiminski, and McCaslin, this information does not warrant constitutional protection because an individual does not have a legitimate expectation of privacy in it.

However, Plaintiff argues that, in addition to the information mentioned above, Minnesota driver's license records contain highly confidential medical information such as seizure, diabetes, and vision information, and that such information has long been recognized as protected.  (See Pl.'s Opp. to County Defs. at 38–39 [Doc. No. 122].)

18

Although it is doubtful whether even this information could create a recognizable privacy interest, Plaintiff's claim still fails because she does not allege that such information was obtained about her.  Nor does Plaintiff's argument that the alleged accesses were flagrant breaches of a pledge of confidentiality save her claim.  (See id. at 35.)  Nowhere does she allege that such confidentiality was crucial to her decision to supply her information. Rather, she merely states that she provided personal information to the DPS in order to obtain a driver's license.  Accordingly, Plaintiff has failed to state a claim against the individual County Defendants under § 1983 because she has not alleged the existence of a legally-cognizable deprivation of a constitutional right.

As noted above, Plaintiff also seeks to impose supervisory liability under § 1983 on the "entity" and "supervisor" Defendants for an alleged failure to monitor and enforce the rules or to train, supervise, and impose proper discipline.  (See Am. Compl. ¶¶ 126–49 [Doc. No. 90].)  However, because Plaintiff has failed to state a claim for an underlying constitutional violation by any individual County Defendant, Plaintiff has also failed to state a claim as to the entity and supervisor County Defendants.  See Brockinton v. City of Sherwood, 503 F.3d 667, 673 (8th Cir. 2007) (noting that a county sheriff could not be held individually liable under § 1983 on a supervisory theory where the allegations did not establish an underlying constitutional violation by the county deputy); McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005) ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").  Therefore, to

the extent that Plaintiff's § 1983 claims as stated in Counts II and III of the Amended

Complaint are based on an underlying constitutional violation, those claims fail.

### c.      Minnesota state law bases

Finally, Plaintiff's § 1983 claims in Counts II and III that are grounded on violations

of Minnesota state law also fail.  Plaintiff does not identify in her Amended Complaint

which of "the laws of the State of Minnesota" she seeks to enforce through § 1983.  (Am.

Compl. ¶¶ 116, 118 [Doc. No. 90].)  However, as noted by the Eighth Circuit, "a violation

of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C.

§ 1983."  Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993) (citation omitted).

For the foregoing reasons, Counts II and III of Plaintiff's Amended Complaint fail to

state a claim for relief against the County Defendants and must be dismissed.

### 2.      Common Law Invasion of Privacy

The County Defendants and Defendant Tompa seek dismissal of Count IV of

Plaintiff's Amended Complaint, which asserts a common law invasion-of-privacy claim for

intrusion upon seclusion.  As a threshold matter, the Court notes that Plaintiff has failed to

address that portion of Defendants' motions.  Therefore, Defendants' motions are

unrebutted in this regard.  While the Court could dismiss Count IV on this basis, it will

briefly address Plaintiff's claim on the merits.

Under Minnesota law, "[i]ntrusion upon seclusion occurs when one 'intentionally

intrudes, physically or otherwise, upon the solitude or seclusion of another or his private

affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'"

Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998) (quoting Restatement

(Second) of Torts § 652B (1977)).  "The tort has three elements:  (a) an intrusion; (b) that is

highly offensive; and (c) into some matter in which a person has a legitimate expectation of

privacy."  Swarthout v. Mut. Serv. Life Ins. Co., 632 N.W.2d 741, 744 (Minn. Ct. App.

2001) (citation omitted).

Minnesota courts have indicated that plaintiffs must meet a high threshold of

offensiveness and expectation of privacy to have a viable claim for intrusion upon seclusion.

For example, while altering a medical information release form and then using that form to

obtain and publicize private medical information may be highly offensive, using improper

means to obtain information does not necessarily satisfy that prong of the test where the

information can be obtained in another, legitimate manner.  Id. at 745.  And, an individual

may have a reasonable expectation of privacy in nude photographs of herself or in her

private medical information, but she does not have a reasonable expectation of privacy in

discussing termination of her employment.  See Lake, 582 N.W.2d at 235 (stating that

"[o]ne's naked body is . . . generally known to others only by choice" and "is a type of

privacy interest worthy of protection"); Swarthout, 632 N.W.2d at 745 (reversing summary

judgment on an intrusion upon seclusion claim involving private medical information);

Groeneweg v. Interstate Enters., Inc., No. A04-1290, 2005 WL 894768, at *6 (Minn. Ct.

App. Apr. 19, 2005) (holding that an individual had no legitimate expectation of privacy at a

meeting with co-workers in which her termination was discussed).

There is only one case analyzing the viability of a claim for intrusion upon seclusion under Minnesota law in the context of an alleged DPPA violation.  In <u>Nelson v. Jesson</u>, the plaintiff alleged that the defendant intruded upon his seclusion by accessing, or allowing access to, his motor vehicle records.  2013 WL 5888235, at *8.  The court found that the expectation of privacy in, and the sensitive nature of, driver's license information is low because individuals frequently show their driver's license to strangers and because most of the information contained in driver's license records is public:  "[A] person can ascertain another's likeness, height, weight, and eye color upon viewing him or her and may be able to ascertain another's driver's license status or address through public records."  <u>Id.</u> Because there was no allegation that the records at issue contained a social security number or financial or medical information, the court held that "no reasonable person could consider the intrusion . . . highly offensive" and dismissed the plaintiff's claim.  <u>Id.</u>

Similarly, Plaintiff's allegations in this case fail to meet the high threshold for offensiveness and expectation of privacy established by Minnesota law.  Count IV states that, "[b]y improperly obtaining [Plaintiff's] private personal information for impermissible reasons, Defendants intentionally intruded upon the solitude or seclusion of [Plaintiff's] private affairs and concerns."  (Am. Compl. ¶ 151 [Doc. No. 90].)  Like the plaintiff in <u>Nelson</u>, Plaintiff here does not allege that the records at issue contained a social security number or financial or medical information.[7]  Rather, the only private information Plaintiff

---

[7]     Even if the Court considers Plaintiff's argument that Minnesota driver's license records contain medical information such as seizure, diabetes, and vision information— which Plaintiff asserted in regard to her § 1983 claims based on federally-protected privacy interests—Plaintiff's claim still fails.  As discussed in that part of this opinion, Plaintiff does

claims was accessed through her driver's license record was her address, color photograph, date of birth, weight, height, eye color, driver identification number, and driving record. Most of this information is included on the face of a driver's license and, as discussed above, there is a low expectation of privacy in this type of information because individuals show their driver's licenses to strangers on a daily basis. Moreover, much of this information can be obtained by looking at an individual or through public records. Therefore, Plaintiff has failed to allege the existence of an intrusion that is "highly offensive" or intrusion upon a matter in which she had a "legitimate expectation of privacy." Accordingly, Count IV is dismissed because Plaintiff has failed to state a common law claim for intrusion upon seclusion.

### 3.    DPPA Claims

Finally, the County Defendants and Defendant Tompa argue that Plaintiff's DPPA claims are barred by the applicable statute of limitations.[8]  "[W]hen it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss." Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (citation omitted). The DPPA does not contain its own statute of limitations provision, and the parties agree that 28 U.S.C. § 1658(a)'s general four-year limitations period for civil actions arising under federal law applies:

---

not allege that Defendants obtained such information about her.

[8]    Defendants also argue that Plaintiff's § 1983 and common law invasion of privacy claims are barred by the relevant statutes of limitations. Because those claims fail for the reasons discussed above, the Court will only address Defendants' statute of limitations argument in regard to Plaintiff's DPPA claims.

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a); (see County Defs.' Supp. Mem. at 5 [Doc. No. 108]; Def. Tompa's Supp. Mem. at 14–15 [Doc. No. 133]; Pl.'s Opp. to County Defs. at 12 [Doc. No. 122]).

However, the parties do dispute when a DPPA cause of action accrues for purposes of determining when the four-year limitations period begins to run.  Defendants assert that the standard rule should apply, while Plaintiff argues that the discovery rule should apply.  Under the standard rule, "a claim accrues 'when the plaintiff has a complete and present cause of action.'"  Gabelli v. S.E.C., 133 S. Ct. 1216, 1220 (2013) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).  The discovery rule, on the other hand, "delays accrual of a cause of action until the plaintiff has 'discovered' it."  Merck & Co. v. Reynolds, 559 U.S. 633, 644 (2010).  This exception to the standard rule arose in 18th-century fraud cases to address the situation in which a defendant's deceptive conduct prevented a plaintiff from knowing he had been defrauded.  Gabelli, 133 S. Ct. at 1221.

While neither the Supreme Court nor the Eighth Circuit has reviewed this issue, a handful of lower courts have analyzed or applied a statute of limitations in a DPPA case.  These courts have found that the standard rule for accrual applies, such that a DPPA cause of action accrues at the time the improper access of information occurs.[9]  See Kost

---

[9]     Plaintiff asserts that the court in English v. Parker, No. 6:09-cv-1914-Orl-31GJK, 2011 WL 1842890 (M.D. Fla. May 16, 2011), used the discovery rule to determine the time of accrual under § 1658(a) in the context of a DPPA claim.  (See Pl.'s Opp. to Def. Tompa at 23 [Doc. No. 142].)  However, the court merely stated that there was not

v. Hunt, Civ. No. 13-583 (JNE/TNL), 2013 WL 6048921, at *5–8  (D. Minn. Nov. 15,

2013) (finding that the exceptional nature of the discovery rule, the text and structure of

§ 1658, and the substantive area covered by the DPPA, all support application of the

standard rule); Smythe v. City of Onamia, Civ. No. 12-cv-03149 (ADM/LIB), 2013 WL

2443849, at *1, *6 n.3 (D. Minn. June 5, 2013) (citing 28 U.S.C. § 1658) (noting, in a

case filed on December 20, 2012, that an instance of allegedly improper retrieval of

motor vehicle record information that occurred in 2003 was outside of the statute of

limitations); Hurst v. State Farm Mut. Auto. Ins. Co., Civ. Action No. 10-1001-GMS,

2012 WL 426018, at *9 (D. Del. Feb. 9, 2012) (citing 28 U.S.C. § 1658(a)) (stating that

"[t]he DPPA provides no statute of limitation for actions brought under its provisions;

civil actions arising under federal law, however, must be brought within four years of the

action giving rise to the suit"); Roberts v. Source for Public Data, No. 2:08-cv-04167-

NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009) (citing 28 U.S.C. § 1658(a))

---

enough information upon which to grant summary judgment on statute of limitations
grounds, and in doing so it listed information that would be relevant to application of the
standard rule and information that would be relevant to application of the discovery rule:

> [Defendant] accessed [Plaintiff's] . . . information three times in 2005.  He
> contends that the four-year federal statute of limitations has run as to any
> alleged violation occurring in 2005.  [Plaintiff] contends that the statute of
> limitations did not begin to run until 2009, when he first learned that his
> information had been accessed.  As the Court cannot tell what information
> was accessed in 2005, and when [Plaintiff] was or should have become
> aware that his records were being accessed, summary judgment is
> inappropriate on this point.

English, 2011 WL 1842890, at *5 (emphases added).  Therefore, the court did not reach
the question as to whether the standard rule or discovery rule would apply to the DPPA
claim.

(same); <u>Haney v. Recall Center</u>, 282 F.R.D. 436, 438 (W.D. Ark. 2012) (citing 28 U.S.C.

§ 1658(a)) (redefining the class to include individuals whose motor vehicle record

information was "obtained" by the defendants after January 14, 2006, when the complaint

was filed on January 14, 2010).

  This Court agrees.  U.S. Supreme Court precedent, the text and structure of the

statute of limitations at issue, and the nature of a DPPA cause of action all support

application of the standard rule.  The Supreme Court recently reaffirmed the exceptional

nature of the discovery rule in <u>Gabelli v. S.E.C.</u>  In that case, the Court analyzed the

language of the general statute of limitations for civil penalty actions stated in 28 U.S.C.

§ 2462:

> Except as otherwise provided by Act of Congress, an action, suit or
> proceeding for the enforcement of any civil fine, penalty, or forfeiture,
> pecuniary or otherwise, shall not be entertained <u>unless commenced within
> five years from the date when the claim first accrued</u> . . . .

<u>Gabelli</u>, 133 S. Ct. at 1219 (quoting 28 U.S.C. § 2462) (emphasis added).  The Court

stated that "the most natural reading of the statute" is that the limitations period begins to

run when the allegedly fraudulent conduct occurs.  <u>Id.</u> at 1220 (noting that, "'[i]n

common parlance a right accrues when it comes into existence'").  According to the

Court, this interpretation advances "'the basic policies of all limitations provisions:

repose, elimination of stale claims, and certainty about a plaintiff's opportunity for

recovery and a defendant's potential liabilities.'"  <u>Id.</u> at 1221 (quoting <u>Rotella v. Wood</u>,

528 U.S. 549, 555 (2000)).  The Court noted that there is no precedent or Congressional

mandate requiring application of the discovery rule in a Government enforcement action

for civil penalties.  Id. at 1221–24.  Thus, the Court held that the standard rule applies:

> As we held long ago, the cases in which 'a statute of limitation may be suspended by causes not mentioned in the statute itself . . . <u>are very limited in character, and are to be admitted with great caution</u>; otherwise the court would make the law instead of administering it.' . . . <u>Given the lack of textual, historical, or equitable reasons to graft a discovery rule onto the statute of limitations of § 2462, we decline to do so.</u>

Id. at 1224 (internal citations omitted) (emphases added).

Despite this precedent, Plaintiff argues that courts construing general statutes of

limitation apply the discovery rule unless Congress manifests a different intent.[10]  (See

Pl.'s Opp. to County Defs. at 12 [Doc. No. 122].)  Indeed, the Eighth Circuit has stated

that, "[i]n federal question cases, the discovery rule applies 'in the absence of a contrary

directive from Congress.'"  Comcast of Ill. X v. Multi-Vision Elecs., Inc., 491 F.3d 938,

944 (8th Cir. 2007) (quoting Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 330 (8th

Cir. 1998)).  However, in acknowledging the lower courts' tendency to apply this

presumption, the Supreme Court has stated that the contrary directive from Congress

need not be explicit—it may also be implied from the text or structure of a particular

statute.  TRW Inc. v. Andrews, 534 U.S. 19, 27–28 (2001).  For example, in TRW Inc. v.

---

[10]    In particular, Plaintiff relies on this Court's decision in In re Weldeabzghi, No. 11-cv-03087 (SRN/SER), 2013 WL 717755 (D. Minn. Feb. 27, 2013).  (See Pl.'s Opp. to County Defs. at 13 [Doc. No. 122].)  In that case, this Court cited to Eighth Circuit precedent establishing that claims accrue for purposes of the statute of limitations in 28 U.S.C. § 2401(a) "when the plaintiff 'either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim.'"  In re Weldeabzghi, 2013 WL 717755, at *6 (quoting Izaak Walton League of Am., Inc. v. Kimbell, 558 F.3d 751, 759 (8th Cir. 2009)).  However, as discussed herein, Congress manifested a different intent in the statute of limitations in 28 U.S.C. §1658(a).

Andrews, the Court analyzed the statute of limitations in the Fair Credit Reporting Act

("FCRA"):

> "An action to enforce any liability created under [the Act] may be
> brought . . . within two years from the date on which the liability arises,
> except that where a defendant has materially and willfully misrepresented
> any information required under [the Act] to be disclosed to an individual
> and the information so misrepresented is material to the establishment of
> the defendant's liability to that individual under [the Act], the action may
> be brought at any time within two years after discovery by the individual of
> the misrepresentation."

Id. at 28 (quoting 15 U.S.C § 1681p).  The Court determined that "Congress implicitly

excluded a general discovery rule by explicitly including a more limited one."  Id.

(citation omitted).  Thus, it concluded that "the text and structure of [the limitations

provision] evince Congress' intent to preclude judicial implication of a discovery rule."

Id.  And, as discussed above, the Gabelli Court applied the standard rule in a federal

question case because there was a "lack of textual, historical, or equitable reasons to graft

a discovery rule onto the statute of limitations."  133 S. Ct. at 1224.  Thus, even if there is

a presumption in favor of the discovery rule, that presumption may be overcome by

explicit or implicit evidence of Congressional intent that the standard rule applies.

The text and structure of § 1658 supply such evidence.   Similar to the statute of

limitations at issue in Gabelli, § 1658(a) uses the term "accrues."  As noted in that case,

the most natural reading of that language is that the limitations period begins to run when

the allegedly fraudulent conduct occurs.  And, similar to the statute of limitations at issue

in TRW Inc., § 1658 contains two limitations periods.  Subsection (a) states that "a civil

action arising under an Act of Congress . . . may not be commenced later than 4 years

after the cause of action <u>accrues</u>," while subsection (b) states:

> Notwithstanding subsection (a), a private right of action <u>that involves a</u>
> <u>claim of fraud, deceit, manipulation, or contrivance in contravention of a</u>
> <u>regulatory requirement concerning the securities laws</u> . . . may be brought
> not later than the earlier of—
>
> (1) 2 years after the <u>discovery</u> of the facts constituting the violation; or
>
> (2) 5 years after such violation.

28 U.S.C. § 1658 (emphases added).  Congress added subsection (b), which expressly

incorporates the discovery rule, in 2002 without amending the language in subsection (a),

demonstrating that Congress did not intend to incorporate a discovery rule into subsection

(a).  <u>Gross v. Max</u>, 906 F. Supp. 2d 802, 812–13 (N.D. Ind. 2012).

Finally, the rationale behind the discovery rule does not support its application in

the DPPA context.  The Supreme Court has "recognized a prevailing discovery rule" in

only a few contexts:  fraud or concealment, latent disease, and medical malpractice.  <u>See</u>

<u>TRW Inc.</u>, 534 U.S. at 27.  In these instances, "'the cry for [such a] rule is loudest.'"  <u>Id.</u>

(quoting <u>Rotella</u>, 528 U.S. at 555).  On the other hand, the Court determined that the

FCRA, which provides a private right of action based on credit reporting agencies' failure

to maintain reasonable procedures and failure to limit the furnishing of credit reports to

permissible purposes, "does not govern an area of the law that cries out for application of

a discovery rule."  <u>Id.</u> at 28.  The nature of the injury addressed by the DPPA—the

obtaining of motor vehicle record information for an impermissible purpose—is not in

the same category as fraud, concealment, latent disease, or medical malpractice because

there is no similarly deceptive conduct or concealment.  Rather, the violation occurs from the accessing of the information without a permissible purpose, which is more akin to the type of injury the FCRA is meant to address.[11]  Therefore, the substantive area governed by the DPPA does not cry out for application of the discovery rule.

Based on the foregoing, the standard rule for accrual applies to Plaintiff's DPPA claims.  The Complaint in this case was filed on March 12, 2012, so Plaintiff's DPPA claims that are based on allegations of improper conduct occurring more than four years prior to that date—i.e., prior to March 12, 2008—are barred.  These claims include the alleged accesses by Defendant Belisle (Chisago County), which occurred in 2006; the alleged accesses by Defendants Lawrence and Vosika (Pine County), which occurred in 2006; and the alleged accesses by Defendant Tompa, which occurred in 2006 and 2007. Accordingly, with the exception of Plaintiff's claim against Defendant Fjosne (who allegedly accessed Plaintiff's driver's license record information in 2011) and Pine County (to the extent the claim is based on the actions of Defendant Fjosne), Plaintiff's DPPA claims against the County Defendants and Defendant Tompa in Count I are dismissed.[12]

---

[11]   Moreover, as noted by Defendants, an individual's ability to obtain a copy of her credit report at any time is analogous to an individual's ability to request information pertaining to her DVS records.  (See County Defs.' Reply Mem. at 10 [Doc. No. 132].)

[12]   The Court notes that the same claims would be dismissed even if the discovery rule were applied in this case.  Under the discovery rule, "a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the basis of the litigation."  Comcast of Ill. X, 491 F.3d at 944 (citation omitted).  Plaintiff states in her Amended Complaint that, in 2007, she began suspecting that law enforcement officers were taking an unusual interest in her because they knew where she lived and what kind of car she drove.  She asserts that

In conclusion, Counts I through IV of Plaintiff's First Amended Complaint are dismissed with respect to Defendants Chisago County, Jay Belisle, Rebecca Lawrence, Dan Vosika, and Millicent Tompa.[13]  As for Defendants Blake Fjosne and Pine County, Counts II through IV of Plaintiff's First Amended Complaint are dismissed, but Count I remains.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.   Defendants Chisago County, Pine County, Jay Belisle, Blake Fjosne, and Rebecca Lawrence's Motion to Dismiss [Doc. No. 106] is **GRANTED**;

2.   Defendant Dan Vosika's Motion to Dismiss [Doc. No. 121] is **GRANTED**;

3.   Defendant Millicent Tompa's Motion to Dismiss or for Judgment on the Pleadings [Doc. No. 97] is **GRANTED**;

4.   Plaintiff's First Amended Complaint (Third Revision) [Doc. No. 90] is **DISMISSED with prejudice** as to Defendants Chisago County, Jay Belisle, Rebecca Lawrence, Dan Vosika, and Millicent Tompa; and

---

these suspicions and one other incident—that several squad cars responded to the scene when she was pulled over for a potential speeding violation in May 2010—prompted her to contact the DPS to ask for the identity of officers who had run her name on the DVS database.  In her brief, Plaintiff states that she contacted the DPS on August 23, 2011.  (Pl.'s Opp. to County Defs. at 5 [Doc. No. 122].)  Thus, the suspicions that put Plaintiff on notice of her alleged injuries occurred in 2007, yet she waited until 2011 to conduct an investigation, and until 2012—well outside of the four-year statute of limitations—to file this lawsuit.  While the Court understands that a plaintiff might not conduct an investigation any earlier in circumstances such as these, the discovery rule does not reach that far to preserve a plaintiff's claims.  In addition, Plaintiff asserts in a footnote that "the continuing violations doctrine would likely apply to some early accesses even if the Court were to apply the [standard] rule."  (Id. at 2 n.1.)  However, Plaintiff does not identify to which occurrences she is referring, nor does she elaborate on the legal theory.  Therefore, the Court declines to address this argument.

[13]   Because all of Plaintiff's asserted claims against Defendant Tompa are dismissed, the Court will not address her qualified immunity argument.

5.      Counts II, III, and IV of Plaintiff's First Amended Complaint (Third Revision) [Doc. No. 90] are **DISMISSED with prejudice** as to Defendants Pine County and Blake Fjosne.


Dated:  January 10, 2014                    s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge